UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                            ) | INDICTMENT NO. 1:20-CR - 481 |
| ) | |
| ELIAYAH BENNETT, et. al.   ) | |
|     Defendant.         ) | |

**DEFENDANT'S FIRST MOTION TO SUPPRESS GRAND JURY SUBPOENAS**

COMES NOW the Defendant, Eliayah Bennett (hereafter "Bennett"), through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(3)(c), Fed R. Crim. P. 17 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and hereby moves this Court for an evidentiary hearing, and an order quashing all subpoenas issued by the Government for cell phone and bank records of any kind allegedly seized by law enforcement officers as described below.

    As grounds, Bennett alleges that the search and seizure of her cell phone and bank records were improper, illegal, and without probable cause, in violation of Defendant's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, in the following particulars:

**I. Facts**

1. In late August 2020, the United States Postal Inspection Service began an investigation of an alleged fraud involving a trust fund operated by the Charles Schwab Corporation.

2. The investigation referenced above began with a transaction between the trust fund operated by Charles Schwab as buyer and Money Metals Exchange in Eagle, Idaho as seller for $11,000,000.00 worth of gold coins.

1

3. The gold coins purchased from Money Metals Exchange were flown to Atlanta on June 16, 2020.

4. Pursuant to this investigation on November 5th, 2020, AUSA Scott McAfee ("AUSA McAfee") issued a Subpoena To Testify Before A Grand Jury to the Wells Fargo relating to all records of accounts held by Movant, for the time period of "June 1, 2019 through present."

5. Pursuant to this investigation on December 1st, 2020, AUSA Scott McAfee ("AUSA McAfee") issued a Subpoena To Testify Before A Grand Jury to the Bank of America, N.A. relating to all records of accounts held by Movant as well as 4xElevenLLC, a corporation for which she had signatory authority and/or the right of withdrawal, for the time period of "January 1, 2020 through present."

6. Pursuant to the same investigation on or about December 1st, 2020, AUSA McAfee issued a Subpoena To Testify Before A Grand Jury to JP Morgan Chase bank for Case No. 2019R00942 - 042, relating to all records of accounts held by Movant, for a time period unknown to the defense at this time.

7. Also pursuant to the investigation, on or about October 6th, 2020, the precise date unknown to the defense at this time, AUSA McAfee issued a Subpoena To Testify Before A Grand Jury to AT&T for subscriber records for phone number 470-902-7171 held by Movant for the time period of "June 1, 2020 through present."

8. Bennett anticipates that information seized will be introduced by the Government in any trial of this matter.

9. The subpoenas of Bennett's cell phone and bank records should be quashed for the following reasons:

    1) Bennett has a privacy interest in the records protected from by the Fourth Amendment.

    2). The records are Bennett's property and effects in bailment to the Bank of America, JP Morgan Chase, Wells Fargo, and AT&T and are protected by the Fourth Amendment.

## II. Grounds For Suppression of Evidence

10.    Bank records like the ones requested by the Government reveal intricate details about one's life. Not only do they reveal spending habits and the identity of payees, they also reveal information about one's location at a particular place and time similar to GPS data, as well as details about your diet, your preferences for clothes, leisure and recreation activities, internet browsing habits, medical conditions, and political leanings. Bank records, effortlessly compiled like Cell Site Location Information held by wireless phone carriers, give the Government the ability to travel back in time to retrace a person's financial history. Financial transactions today can be done instantly at the click of a button on a phone or laptop and no longer rely on negotiated instruments like checks. Even the act of withdrawing physical cash from the bank is almost completely automated as ATM's have substantially replaced live bank tellers, creating new digital surveillance opportunities in the process. Just as cell phones contain "a digital record of nearly every aspect of [the owners'] lives- from the mundane to the intimate," a much more pervasive scrutiny of one's life is implicated in the seizure of bank records than a search of a physical premises. *Riley v. California,* 573 U.S. 373, 395 (2014). "And the government's unrestrained power to assemble

data that reveal private aspects of identity is susceptible to abuse." <u>U.S. v. Jones</u>, 565 U.S. 400, 416 (2012) (Sotamayor, J. concurring).

11. "More fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties." <u>Jones</u>, 565 U.S. at 417 (Sotamayor, J. concurring), citing <u>Smith v. Maryland</u>, 442 U.S. 735, at 742 (1979) and <u>United States v. Miller</u>, 425 U.S. 435, 443 (1976). The logic that the Court in <u>Miller</u> used to deny an expectation of privacy in bank records no longer holds up due to advances in computer technology, automated banking, and the evolution of online shopping and purchasing platforms. The same is true for <u>Smith</u>, as cell phone technology was in its' infancy and unknown to the general public when it was decided. The leaps in wireless technology made phone records increasingly complicated in terms of the amount of data they yield and the kinds of data they yield.

12. The decisions of the Supreme Court in cases like <u>Riley</u> and <u>Carpenter v. U.S.</u>, 138 S. Ct. 2206 (2018) reflect the steady erosion of the third party doctrine as expounded in <u>Smith</u> and especially <u>Miller,</u> which consider bank records such as checks "not confidential communications but negotiable instruments to be used in commercial transactions." <u>Miller</u>, 425 U.S. at 442. The analysis the Court used in <u>Miller</u> doesn't apply anymore in an age when banking is done instantly and electronically without the need for intervention by bank employees. Today, the ordinary course of banking business doesn't require revealing account details to third persons but is handled automatically by computers and other automatic/electronic means making time-stamped records of each transaction. There's now an implicitly reasonable expectation

of privacy in one's information associated with bank records stored with a third party such as Bank of America, JP Morgan Chase, and Wells Fargo, particularly regarding expenditures intended to be confidential. In addition to the increase in scope of the privacy intrusion implicated by the individual categories discussed in *Smith* and *Miller*, the Court should also consider the depth and length of the intrusion here, as the Government obtained bank records going back over a year in the case of Wells Fargo, and the better part of a year in the case of the Bank of America. Finally, when considering the depth of the privacy intrusion in this case, that the Government is probing both classes of information belonging to Bennett and implicated in *Smith* and *Miller simultaneously*.

13. States are increasingly protecting personal data by statue in places like California which passed The California Consumer Privacy Act of 2018 which set out minimum notice requirements for businesses that collect personal data and which allows citizens autonomy to opt out of having their information shared by businesses to other parties. Cal Civil Code §§ 1798.100 - 1798.199 (West 2022).

13. The Court in *Carpenter* followed a line of cases beginning with *Katz v. United States*, 389 U.S. 347, 351, that say the Fourth Amendment protects both one's interest in property as well as certain expectations of privacy. *Carpenter v. U.S.*, 138 S.Ct. 2206, 2217 (2018) The holding in *Carpenter* takes into consideration that society and phone technology changed so much since the third-party doctrine was applied to phone records in *Smith* that the third party doctrine was no longer applicable to the Cell Site Location Information held by telecommunications carriers. *Carpenter*, 138 S.Ct. at 2217. "Given the unique nature of cell phone location records, the fact that

the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection." *Id.*

14. Similarly, given that financial transactions can be conducted on your cell phone using an App connected to your bank account, you carry your bank account with you everywhere. And as we move closer to being a completely cashless society, the scope of personal information obtained by banks from bank records and other means like location and other data communicated through banking Apps will continue to grow. "The rule that the Court adopts 'must take account of more sophisticated systems that are already in use or development.'" *Carpenter*, 138 S. Ct. at 2218, citing *Kyllo v. United States*, 533 U.S. 27, 36 (2001). Therefore, the third party doctrine as applied in *Smith* should no longer apply to cellular service providers and *Miller* should no longer apply to personal data held by banks. In the wake of the decision in *Carpenter*, the Government should get a warrant supported by probable cause for cell phone subscriber records and pen registers as well as for bank records.

15. Nonetheless, if this Court hesitates to extend the reasoning in *Katz* and *Carpenter* to overrule *Smith* and *Miller* and find a reasonable privacy interest in Bennett's cell phone and bank records, there is an alternative analysis. It began with Justice Sotamayor's concurrence in *United States v. Jones*, 565 U.S. 400, 417 (2012) which questioned the third party doctrine as being "ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks." Justice Gorsuch struck a similar tone in his dissent in *Carpenter* when he wrote, citing *Smith* and *Miller*, that "[b]y these steps, the Court came to conclude, the Constitution does nothing to limit investigators from

6

searching records you've entrusted to your bank, accountant, and maybe even your doctor. What's left of the Fourth Amendment?" *Carpenter*, 138 S.Ct. at 2261-2262 (Gorsuch, J. dissenting)

Instead, Justice Gorsuch advocated a Fourth Amendment doctrine based more on traditional property analysis where "Fourth Amendment protections for your papers and effects do not automatically disappear just because you share them with third parties." *Id.* at 2268. Trusting a bank with your money and the data it generates would be considered a "bailment" where the bank is considered a "bailee" who "owes a legal duty to keep the items safe, according to the terms of the parties' contract if they have one, and according to the 'implication[s] from their conduct' if they don't." *Id*. at 2268-2269, citing 8 C.J.S., Bailments § 36, pp. 468-469 (2017). "This approach is quite different from *Smith* and *Miller*'s (counter)-intuitive approach to reasonable expectations of privacy; where those cases extinguish Fourth Amendment interests once records are given to a third party, property law may preserve them." *Id* at 2269.

Justice Gorsuch cites *Ex parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877(1878) as the basis for such an approach where the "Court held that sealed letters placed in the mail are 'as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles.'" *Id.* Furthermore, "*Jackson* suggests the existence of a constitutional floor below which Fourth Amendment rights may not descend." *Id.* at 2270. "[T]his constitutional floor may, in some instances, bar efforts to circumvent the Fourth Amendment's protection through the use of subpoenas." *Id.* at 2271. In Gorsuch's

7

    analysis, where information held by banks is considered personal property and/or effects, it's given full protection by the Fourth Amendment.

14. The Fourth Amendment requires a showing of probable cause prior to law enforcement seizing said information. *Id.* See also *United States v. Warshak*, 631 F.3d 266 (6th Cir.2010) (warrant required for search of email.) On the other hand, the Court's majority in *Carpenter* held "that the Government must generally obtain a warrant supported by probable cause before acquiring such records" where the owner maintains a reasonable expectation of privacy. *Id.* at 2221. For either or both of the reasons explained above, Bennett's bank records are protected by the Fourth Amendment and this Court should require the Government to show probable cause and obtain a search warrant.

WHEREFORE, Bennett respectfully requests that this Court grant an evidentiary hearing, quash the grand jury subpoenas, and suppress the improperly obtained evidence against her in this case;

    This 22d day of April 2022.

                                Respectfully submitted,

                                /S/ Bruce Harvey_____
                                LAW OFFICES OF BRUCE S. HARVEY
                                ATTORNEYS FOR DEFENDANT
                                Bruce S. Harvey, #335175
                                bruce@bharveylawfirm.com
                                Jamie Roberts, #608590
                                jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **INDICTMENT NO. 1:20-CR - 481** |
| | ) | |
| **ELIAYAH BENNETT, et. al.** | ) | |
|     **Defendant.** | ) | |

**CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing *Defendant's First Preliminary Motion To Suppress Grand Jury Subpoena* on opposing counsel by facsimile transmission, electronic delivery, by hand delivery, or by depositing a copy of the same in the United States Mail with sufficient postage thereon, addressed as follows:

Scott McAfee, AUSA
75 Ted Turner Drive , Suite 600
Atlanta, Georgia 30303

This 22d day of April 2022.


Respectfully submitted,


/S/ Bruce Harvey_____
LAW OFFICES OF BRUCE S. HARVEY
ATTORNEYS FOR DEFENDANT
Bruce S. Harvey, #335175
bruce@bharveylawfirm.com
Jamie Roberts, #608590
jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax

9