IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ELIAYAH BENNETT

Criminal Action No.

1:20-CR-481-SCJ-RDC

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS SEARCH WARRANT AND OTHER EVIDENCE

COMES NOW the United States of America, by Ryan K. Buchanan, United States Attorney, and Irina K. Dutcher, Assistant United States Attorney, Northern District of Georgia, and hereby files the Government's Response to Defendant's Motion to Suppress Search Warrant and Other Evidence. A totality of the circumstances demonstrates that the warrant authorizing the search and seizure of evidence from 4420 Northside Chase NW, Atlanta, Georgia 30327 was based on a valid determination of probable cause and was sufficiently specific and particularized. Furthermore, the agents who executed the search warrant relied in good faith on the probable cause determination made by the magistrate judge who issued it. Consequently, the evidence seized based on the warrant is not subject to suppression and defendant's motion should be denied.

### I.    Procedural History

On December 8, 2020, a federal grand jury returned a seven-count indictment charging: Arthur Lee Cofield (hereinafter "Cofield") with a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 (Count One) and aggravated identity

theft in violation 18 U.S.C. §1028A(a)(1) (Count Two); Cofield and Eldridge Maurice Bennett with a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Three) and money laundering in violation of 18 U.S.C. § 1956(a)(l)(B)(i) (Count Four) and 18 U.S.C. § 1957 (Count Five); and Cofield, Eldridge Maurice Bennett, and Eliayah Bennett with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Six) and money laundering in violation of 18 U.S.C. § 1957 (Count Seven). (Doc. 1). The charges in the indictment against Defendant Eliayah Bennett (Counts Six and Seven) arose from the transfer of hundreds of thousands of dollars in U.S. currency for the purchase of a residential property at 4099 Randall Mill Rd, Atlanta, knowing that the transactions involved property of a value greater than $10,000 that was criminally derived from bank fraud. (Id.).

Following the indictment, on December 10, 2020, agents executed a federal search warrant at a house located at 4420 Northside Chase NW, Atlanta, Georgia 30327 (hereinafter "the Residence"), which was associated with Eliayah Bennett and Eldridge Maurice Bennett. (Exhibit A, Search Warrant 1:20-MC-2355, hereinafter "Ex. A"). That warrant was issued on December 4, 2020, and authorized agents to search for evidence of a conspiracy to commit bank fraud and money laundering. (Id.). During the execution of the warrant, agents seized, among other items, a Land Rover SUV, a firearm, laptops, a cell phone, and U.S. currency. On April 5, 2022, Defendant Eliayah Bennett filed a motion to suppress evidence seized pursuant to the search warrant. (Doc. 114).

## II.  Statement of Facts

### A.  Search Warrant for Residence

On December 4, 2020, United States Magistrate Judge Russell G. Vineyard issued a warrant authorizing law enforcement officers to search 4420 Northside Chase NW, Atlanta, Georgia 30327 (the Residence) for evidence of conspiracy to commit bank fraud and money laundering. (Ex. A). United States Postal Inspection Service Postal Inspector (PI) Zito submitted the affidavit in support of the search warrant. (Exhibit B, Application and Affidavit for Residence Search Warrant 1:20-MC-2355, hereinafter "Ex. B"). In that affidavit, PI Zito summarized, in pertinent part, that the Residence appeared to be the current residence of Eliayah Bennett and Eldridge Bennett. (Ex. B, ¶¶ 38, 41, 43). Both Eldridge and Eliayah Bennett used the Residence to convey several hundred thousand dollars in cash to Michael Zembillas to purchase 4099 Randall Mill Road (Ex. B, ¶ 43), a transaction which is the subject of the government's money laundering charge in Counts Six and Seven of the indictment (Doc. 1).

The affidavit alleged in detail the facts supporting PI Zito's assertion of probable cause to believe that Eliayah Bennett and Eldridge Bennett were involved in a criminal conspiracy with Cofield to launder money criminally derived from bank fraud. And the affidavit established the connection between the defendants' money laundering activity and the Residence to be search. Specifically, the affidavit included, in pertinent part, the following facts:

1. *Theft of $11 million from Charles Schwab*

On August 31, 2020, PI Zito received information that a fraud had been committed on the Charles Schwab Corporation ("Schwab") during which a fraudster gained access to a customer account belonging to victim Sidney Kimmel, completed an online application via Schwab.com, and requested the opening of a Schwab Individual Brokerage Account in the victim's name. (Ex. B, ¶ 14). On June 8, 2020, the imposter purporting to be Kimmel contacted Schwab by phone via 323-909-8701 and stated that he had uploaded a wire disbursement form to the secure email option available on his online account. (Id.). The emailed document contained a wire disbursement request and a forged letter of authorization which all appeared to be signed by Kimmel. (Id.). On June 9, 2020, a wire disbursement in the amount of $11,000,000 was sent from the Schwab account to a Zions Bank account for Money Metals Exchange, LLC. (Id.). This payment was made without the knowledge or consent of the actual owner of the account. (Id.). The transfer of funds was for the purchase of 6,106 American Eagle gold coins. (Id.).

On June 10, 2020, members of the Georgia Department of Corrections ("GDC") prison staff searched the prison cell of Cofield and recovered a blue Samsung cell phone from under Cofield's armpit. (Id., ¶ 17). The prison forensics unit extracted the phone and determined that Cofield was using a TextNow account which provides users with a different phone number that can be used to call and text. (Id.).

Within the cell phone extraction, PI Zito identified conversations between Cofield and a sales member of Money Metals Exchange in Eagle, Idaho. (Id., ¶ 18).

In these conversations, the sales member believed he was communicating with Kimmel via 323-909-870, the same number that was used to contact Schwab. The conversation involved the purchase of gold coins from Money Metals Exchange LLC in the amount of $11,000,000. (Id.).

PI Zito interviewed Michael Evans, the owner of a private security company. (Id., ¶ 19). Evans said he was contacted by a man purporting to be Kimmel, who wanted a security team to transport items from Idaho to Atlanta. (Id.). Evans subcontracted to Michael Blake to provide security for the contract. The phone number used to communicate with Blake was number 323-909-8701. (Id.). Blake eventually landed at Atlanta Signature Airport on June 16, 2020, where he was met by two men in a white Jeep Cherokee. (Id., ¶ 20). Blake placed the gold into the back of the Jeep. (Id.). The passenger of the Jeep exited and showed his identification to Blake. (Id.). While Blake believed that the photo on the driver's license appeared to be the same individual picking up the gold, the name on the driver's license was "Russell Johnson." (Id.). Using law enforcement databases, PI Zito was able to determine that this identification was fraudulent, but the photo used on the fraudulent driver's license was of Eldridge Maurice Bennett. (Id.).

2. ***Purchase of 4099 Randall Mill Road by COFIELD, BENNETT, and ELIAYAH***

PI Zito also interviewed a Scott West, a home builder/architect in the Atlanta area. (Id., ¶ 25). Mr. West stated that he had communicated with an individual purporting to be "Archie Lee" regarding land for sale in the Atlanta Buckhead area. (Id.). West was given a $5,000 retainer for his services and he escorted "Lee's"

wife to several properties in the Buckhead area. (Id.). West knew "Lee's" wife as "Indiana." (Id.). According to West, Indiana drove a Land Rover. (Id.) "Indiana" is a known alias for defendant Eliayah Bennett. (Id.). Eliayah Bennett previously has claimed to be the wife of Cofield, and she is known to own and drive a Land Rover. (Id.). Eliayah Bennett also is listed in Cofield's prison report from GDC as an emergency contact and person authorized to conduct financial transactions on behalf of Cofield. (Id.). Based on those facts, PI Zito believed "Lee" was Cofield and that West met with Eliayah Bennett when showing properties on "Lee's" behalf. (Id.).

PI Zito also interviewed Michael Zembillis, who was the owner of a property located at 4099 Randall Mill Road, NW, Atlanta, Georgia. (Id., ¶ 27). Zembillas stated that he was contacted on July 14, 2020, by an individual known as "Archie Lee," who told Zembillas that he was interested in purchasing the property that was under construction at 4099 Randall Mill Road. "Lee" offered $4.4 million for the property and Zembillas accepted. (Id.) On July 15, 2020, Zembillas met "Lee's" wife" and her father when they viewed the property at 4099 Randall Mill Road (Id., ¶ 28). Zembillas stated that "Lee's" wife introduced herself as "Indiana Gomez," and her father introduced himself as "Maurice." (Id.). PI Zito showed photographs of Eliayah Bennett and Eldridge Bennett to Zembillas and he identified the photographs as the individuals with whom he met. (Id.) Zembillas stated that "Indiana Gomez," later identified as Eliayah Bennett, arrived at 4099 Randall Mill Road driving a Land Rover. (Id.).

Zembillas stated that he received two $220,000 payments and one $280,000 payment as a deposit on the property. The first deposit in the amount of $220,000 was wired from Justin Wolk, who purported to represent "Lee" on home deals because "Lee" was liquid in cash but had poor credit. (Id., ¶ 29). The second payment was in cash and given to Zembillas on July 24, 2020, by Eliayah Bennet (Id., ¶ 30). Zembillas stated that on July 24, 2020, he went to a house located at 4420 Northside Chase, Atlanta, Georgia (the Residence). (Id.).  Zembillas knew the Residence as Eliayah Bennett's current residence. (Id.). Zembillas stated that he went into the living room of the Residence where he observed a counting machine and money wrapped in $10,000 increments in a shopping bag. (Id.). Zembillas stated that Eliayah Bennett counted the money using the machine. (Id.). Zembillas stated that he believed Maurice, later identified as Eldridge Maurice Bennett was at the Residence, but he only communicated with Eliayah Bennett during this transaction. (Id.). On July 26, 2020, Zembillas went back to the Residence, where he met Maurice, later identified as Eldridge Maurice Bennett. (Id., ¶ 31). Eldridge Bennett provided Zembillas with the final deposit of $280,000 in cash. (Id.)

The property at 4099 Randall Mill Road closed on September 1, 2020 at the Alpharetta Branch of Cadence Bank. (Id., ¶ 33). PI Zito interviewed the closing agent, who identified the individuals present at the closing as Justin Wolk and a man using the name "Maurice." (Id.). Maurice carried with him inside the bank multiple duffel bags containing United States currency. (Id.). The total amount of the currency was just short of the total amount needed to complete the closing, so Maurice left the room and returned with approximately $20,000. (Id.). From

recorded images provided by Cadence Bank, PI Zito observed Eldridge Bennett leave the bank and approach a white Land Rover parked in the bank parking lot, open the front-passenger door, and return to the bank holding a large amount of United States currency. (Id.). This Land Rover was similar in color and style to the vehicle driven by Eliayah Bennett. (Id.). PI Zito identified Justin Wolk and Eldridge Bennett as the two individuals conducting the transaction. (Id.).   In addition, PI Zito observed Eldridge holding two different cellphones. (Id.).

The total sum counted was approximately $3.4 million. (Id., ¶ 34). The closing agent stated that once both parties agreed on the correct sum of money, "Maurice" told the agent that his daughter was coming to pick him up. (Id.). After exiting the bank, Eldridge Bennett entered a white Land Rover. (Id.).

### 3. *Recent activity by Cofield, Eldridge Bennett, and Eliayah Bennett*

Geo-location data for phone number 310-601-6188, identified as Eliayah Bennett's phone from October 30, 2020, through November 28, 2020, indicated that she consistently resided in the area of 4420 Northside Chase (the Residence) overnight. (Id., ¶38). According to toll records, 310-601-6188 was one of the most frequently and regularly contacted phone numbers of 770-296-4739, which was identified as Cofield's current phone number [as of December 2020] and 770-851-5778, which was the previous phone number used by Cofield to contact Zembillas. (Id., ¶ 39).

PI Zito asserted that

> "Because COFIELD is incarcerated, and based on the investigation so far, I believe COFIELD conducts his fraudulent activities exclusively through the use of his contraband

cellphone. This activity includes frequent contact with various conspirators located outside of prison. Based on this information, I believe that presently at the Target Locations there is evidence of the fraudulent conspiracy as outlined in Attachment B, which would include gold coins last known to be in the possession of [Eldridge] BENNETT, cash proceeds derived from the fraudulent conspiracy, and various electronic devices used to communicate with COFIELD and other conspirators."

(Id., ¶¶44-45).

The Attachments to the Warrant describe in detail the place to be searched, i.e., the Residence, (Ex. A, Attachment A), and enumerate specific items to be seized (Ex. A, Attachment B.). Specifically, the warrant authorizes the seizure of evidence and instrumentalities of violations of Title 18, United States Code, Sections 1349, 1956, and 1957, including nine enumerated categories of items. As to any electronic devices permitted to be seized, the warrant authorized a search for specific contents "that relate to violations of 18 U.S.C. §§ 1349, 1956, and 1957 *between June 1, 2020, and the present*. . ." (Id., emphasis added.)

## III.   Legal Authority and Argument

Whether an affidavit is sufficient to establish probable cause is subject to a "totality-of-the-circumstances analysis." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The

reviewing court's task is to ensure the magistrate judge had a "substantial basis" for finding probable cause. *Id.* at 238–39, 103 S.Ct. at 2332. When reviewing an affidavit to determine if it contains probable cause, the entire affidavit must be read together "as a whole." *See United States v. Reed*, 700 F.2d 638, 641 (11th Cir. 1983). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S at 236, 103 S.Ct. at 2331 (quotation marks omitted).

The focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at the place to be searched. *United States v. Martin*, 297 F.3d 1308, 1315 (11th Cir. 2002). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.*

The affidavit supporting the warrant requires only a substantial basis for believing that a search would uncover evidence of criminal activity, but does not require a showing that every component or ingredient involved in the illegal act has occurred. *See, e.g., United States v. Nation*, 243 F.3d 467, 470 (8th Cir. 2001). "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Gates*, 462 U.S. at 235, cited in *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991); *see, e.g., United States v. Grimaldo*, 214 F.3d 967, 976 (8th Cir. 2000) ("Probable cause exists when the affidavit sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the

place to be searched. . . . A prima facie showing of criminal activity is not required to support probable cause.")

**A. The Residence search warrant was based on probable cause.**

Here, a sufficient basis for finding probable cause existed for the warrant. The affidavit established a clear link between Eliayah and Eldridge Bennett and the Residence that was searched[1]. Specifically, the affidavit showed that the Residence was a home in which Eliayah Bennett lived. (Ex. B, ¶ 30). PI Zito indicated that the geo-location data for Eliayah Bennett's phone showed that she consistently spent the night there. (Ex. B, ¶ 38).

The facts outlined in the affidavit demonstrated probable cause to believe that Eliayah and Eldridge Bennett were involved in a money laundering conspiracy; that is, Eldridge Bennett obtained the gold coins originating from Money Metals

---

[1] Defendant Eliayah Bennett has the burden to show standing. To prevail on a claim that evidence was seized in violation of the Fourth Amendment, the defendant bears the burden of demonstrating a legitimate expectation of privacy in the areas searched. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008); *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997); *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (holding that the individual challenging the search has the burden of both proof and persuasion). A defendant may not establish standing by relying on the government's theory of the case. *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993); *United States v. McNeal*, 82 F. Supp. 2d 945, 950 (S.D. Ind. 2000); *see also United States v. Henry*, No. 1:09-cr-522-TCB-GGB, 2010 U.S. Dist. LEXIS 139164, 2010 WL 5559207, at *4 (N.D. Ga. Dec. 7, 2010) (R&R adopted by 2011 U.S. Dist. LEXIS 1641, 2011 WL 65762 (N.D. Ga. Jan. 7, 2011)) ("The Government correctly contends that Defendant cannot show standing simply through the contentions of Government agents or the theory of the Government's case.") (citing *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995)).

Exchange that were purchased from the proceeds of Cofield's $11,000,000 bank fraud (Id., ¶ 20); and Eliayah and Eldrige Bennett thereafter facilitated the purchase of the Randall Mill property on behalf of Cofield using bulk U.S. currency that they knew to be criminally derived from proceeds of bank fraud (Id., ¶¶ 30-34).

PI Zito's affidavit also established a clear link between the Residence and the criminal activity in which Eliayah and Eldridge Bennett were engaged. PI Zito averred that Zembillis recalled seeing both Eliayah Bennett and Eldridge Bennett at the Residence at the end of July 2020 when he picked up the deposit money for the Randall Mill property at the Residence. (Id., ¶¶ 30-31).  Zembillas stated that, in the living room of the Residence, he observed a counting machine and money wrapped in $10,000 increments in a shopping bag. (Id.). Zembillas stated that on July 24, 2020, Eliayah Bennett counted the money using the machine. (Id.). On July 26, 2020, Zembillas went back to the Residence, where Eldridge Maurice Bennett provided Zembillas with the final deposit of $280,000 in cash. (Id., ¶ 31). In other words, the transfer of bulk currency through which agents believed the suspects to be engaged in money laundering actually occurred inside the Residence at issue.

Additionally, the affidavit described the connection between electronic devices, especially cellular telephones, and the illegal fraud activity. PI Zito explained Cofield's use of contraband cellular telephones for his criminal activities and connected those phones with the electronic devices known to be used by Eliayah Bennett; that is, PI Zito submitted, and this court found, that these facts sufficiently

demonstrated probable cause to believe that electronic devices were used to facilitate money laundering. (Id.)

Based on a totality of the circumstances, the court properly made a common sense determination that there was probable cause to believe that Cofield committed bank fraud related to the Schwab account and conspired with Eliayah and Eldridge Bennett to engage in money laundering, and that there was a fair probability that the proceeds, contraband, or other evidence of a fraud conspiracy and money laundering would be found in the Residence that was occupied by the suspects. *See Gates*, 462 U.S at 231, 103 S.Ct. at 2328 (reasoning that search warrants deal in probabilities and those probabilities leave room for "common sense conclusions about human behavior"). Accordingly, the Residence search warrant was based on a valid determination of probable cause, and therefore, the items seized pursuant to that warrant are not subject to suppression.

**B. The search warrant was sufficiently specific and particularized.**

The Fourth Amendment requires that a search warrant describe with particularity the place to be searched and the items to be seized. *See, e.g., Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). The requirement is to prevent "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 67 (1971)." At the same time, it is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *United States v. Wuagneux*,

683F.2d 1343, 1349 (11th Cir. 1982). *See also United States v. Moody*, 977 F.2d 1425, 1432 (11th Cir. 1992) (citing *Wuagneux*). When searching for documents, some perusal may be necessary to determine their relevance, and removal to an off-site location for subsequent review may be appropriate. *United States v. Lambert*, 887 F.2d 158, 1572 (11th Cir. 1989).

Here, the warrant for the Residence described with particularity the items to be seized and further limited the search and seizure of items to a particular time frame. Each of the nine categories of evidence to be seized was tailored to the investigation of bank fraud and money laundering as described in the affidavit; i.e., books, financial records, currency, money counters, electronic devices, phone books, indicia of occupancy, lock boxes, and records of income/expenditures. (Ex. A, Attachment B). As to any electronic devices permitted to be seized, the warrant authorized a search for specific contents "that relate to violations of 18 U.S.C. §§ 1349, 1956, and 1957 *between June 1, 2020, and the present. . .*" (Id., emphasis added.)

The warrant was as specific in its description of the items to be searched for and seized as was reasonable under the circumstances at the time the warrant was issued. *See United States v. Abboud*, 438 F.3d 554, 575-76 (6th Cir. 2006) (warrant satisfied particularity requirement because officers could not have known in advance of the precise documents and records that were being utilized in bank fraud case and a more specific alternative did not exist to the search warrant's list of items to be seized). Defendant Bennett has not identified any particular item that was seized that she alleges should not have been seized pursuant to the warrant.

**C. Even if the search warrant was invalid, the exclusionary rule does not apply to exclude evidence because officers reasonably relied in good faith upon a magistrate's determination of probable cause.**

More than 30 years ago, the Supreme Court ruled that the exclusionary rule is not to be applied to exclude evidence obtained by officers who reasonably relied in good faith upon a magistrate's determination of probable cause and issuance of a warrant that was later found to be invalid. *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984). The exclusionary rule is designed to deter police misconduct, and when an officer acting in good faith obtains a warrant from a judge, "there is literally nothing more the policeman can do in seeking to comply with the law." *Id.* at 921 (quoting *Stone v. Powell*, 428 U.S. 465, 498, 96 S.Ct. 3037, 3054 (1976) (Burger, C.J., concurring)).

The good faith exception does not apply in four limited sets of circumstances where: (1) the magistrate was misled by information in an affidavit that the affiant knew or should have known was false; (2) the magistrate wholly abandoned her judicial role; (3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 914-915; *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003). The "threshold for establishing this [fourth] exception is a high one, and it should be," because in the ordinary case, a police officer cannot be expected to

question a magistrate's decision to issue a warrant. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245, 182 L. Ed. 2d 47 (2012) (citing and quoting *Leon*, 468 U.S. at 921).

The Eleventh Circuit Court of Appeals has described the inquiry here as whether the affidavit was so bare-boned and conclusory that no officer could have reasonably relied on the warrant obtained based on the affidavit. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir.1998). During this inquiry, the court looks only at the face of the affidavit. *Robinson*, 336 F.3d at 1296 (holding that "in order to determine whether an affidavit lacked sufficient indicia of probable cause, we must look only at the face of the affidavit.").

Here, considering the face of the affidavit for the challenged search warrant, none of the exceptions to the good faith rule apply. There is no evidence that the magistrate judge was misled by a false material fact in the affidavit. The magistrate judge did not wholly abandon his judicial role. The affidavit supporting the warrant contained valid probable cause, or at very least, sufficient indicia of probable cause to render official belief in its existence reasonable. And the warrant adequately particularized the place to be searched and the things to be seized. In other words, the warrant was not so facially deficient that the executing officers could not reasonably presume it to be valid. Accordingly, the *Leon* good faith rule protects the officers' reasonable reliance upon the magistrate judge's determination of probable cause in this case and the exclusionary rule must not to be applied to suppress the evidence obtained by the officers pursuant to the issued warrant.

**IV.    Conclusion**

For the foregoing reasons, Defendant's Motion to Suppress Search Warrant and Other Evidence should be denied.

Respectfully submitted, this 1st day of JULY 2022.

Ryan K. Buchanan
    United States Attorney
Northern District of Georgia

s/ *Irina K. Dutcher*
IRINA K. DUTCHER
    Assistant United States Attorney
Georgia Bar No. 583088
600 Richard B. Russell Building
75 Ted Turner Drive SW
Atlanta, Georgia 30303
(404) 581-6000
(404) 581-6181 FAX

17

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Motion for

Reconsideration today by filing it using the Court's CM/ECF system, which

automatically notifies the parties and counsel of record.

> Bruce Harvey
> Law Offices of Bruce S. Harvey
> 146 Nassau St. NW
> Atlanta, GA 30303
> (404)659-4628
> bruce@bharveylawfirm.com

July 1, 2022

/s/ Irina K. Dutcher
_____

Irina K. Dutcher

*Assistant United States Attorney*

18