IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELIAYAH BENNETT | Criminal Action No.<br><br>1:20-CR-481-SCJ-RDC |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S FIRST MOTION TO SUPPRESS GRAND JURY SUBPOENAS**

COMES NOW the United States of America, by Ryan K. Buchanan, United States Attorney, and Irina K. Dutcher, Assistant United States Attorney, Northern District of Georgia, and hereby files the Government's Response in Opposition to Defendant's First Motion to Suppress Grand Jury Subpoenas. Defendant Eliayah Bennett requests the Court to suppress evidence[1] obtained by the Government pursuant to subpoenas lawfully issued to certain banks and a cell phone service

---

[1] Throughout the motion, Defendant conflates a request to suppress the evidence obtained pursuant to the subpoenas with a motion to quash the subpoenas. Because Defendant was not a party to the subject subpoenas, and the financial institutions and cell phone provider to whom the subpoenas were issued already have produced responsive records, the Government considers the motion before the Court a motion to suppress evidence. However, even if Defendant had timely filed a motion to quash, seeking to prevent the businesses from complying with the issued Grand Jury subpoenas, she would have lacked standing to challenge the subpoenas as violations of her privacy because she cannot demonstrate a reasonable expectation of privacy in records held by the banks and cell phone service providers, as further explained herein. *See Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018).

provider by a federal Grand Jury. Because the Defendant failed to demonstrate that she has reasonable expectation of privacy in the records that she seeks to suppress, the Court should deny her motion.

## I. Statement of Facts

During an investigation of bank fraud and money laundering activity by the Defendant and her conspirators, the Government obtained evidence from several financial institutions and a cellular phone service provider through federal Grand Jury subpoenas[2], including, in pertinent part:

- a subpoena issued on or about November 3, 2020, directing JPMorgan Chase to provide records of Account Number 632865603 and all accounts held by Eliayah Bennett, for the time period from June 1, 2020 through the present date [November 3, 2020];

---

[2] A federal grand jury enjoys sweeping powers to investigate allegations of criminal behavior. *United States v. Calandra*, 414 U.S. 338, 343-44, 94 Ct. 613, 38 L. Ed. 2d 561 (1974); *In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013 (11th Cir. 1993). The government can enforce grand jury subpoenas without having to demonstrate relevance or admissibility of sought-after evidence. The only limit on this enforceability is if there is "no reasonable possibility" the materials would yield evidence relevant to the investigation. *United States v. R. Enterprises Inc.*, 498 U.S. 292, 301, 11 S. Ct. 722, 112 L. Ed. 2d 795 (1991). Further, "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998). Therefore, to quash subpoena or suppress the evidence obtained through it, the moving party would have to show the subpoena, when issued, had "no reasonable possibility" of yielding relevant investigative information or that the information subpoenaed required a warrant.

- a subpoena issued on or about November 5, 2020, directing Wells Fargo to provide records for accounts related to Eliayah Bennett for the time period from June 1, 2019 through the present date [November 5, 2020];

- a subpoena issued on or about November 18, 2020, directing Bank of America to provide all records pertaining to Eliayah Bennett and the business entity 4XElevenLLC for the time period from June 1, 2020 through the present date [November 18, 2020]; and

- a subpoena issued on or about October 6, 2020, directing AT&T to provide toll records, subscriber information, and account-related information for phone number 470-902-7171 for the time period from June 1, 2020 through the present date [October 6, 2020].

**II. Legal Authority and Argument**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A party may establish a Fourth Amendment search by showing that the government engaged in conduct that "would have constituted a 'search' within the original meaning of the Fourth Amendment," *United States v. Jones*, 565 U.S. 400, 406 n.3, 132 S. Ct. 945, 950 n.3, 181 L. Ed. 2d 911 (2012). "Search" originally was tied to common-law trespass and involved some trespassory intrusion on property. *See, e.g.*, *Kyllo v. United States*, 533 U.S. 27, 31-32, 121 S. Ct. 2038, 2042, 150 L. Ed. 2d 94 (2001). But in 1967, the Supreme Court added a separate test—the reasonable-expectation-of-privacy test—to analyze whether a search occurred for purposes of the Fourth Amendment. *See Smith v.*

*Maryland*, 442 U.S. 735, 739-40, 99 S. Ct. 2577, 2579-80, 61 L. Ed. 2d 220 (1979) (citing *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). Thus, to determine whether the government's obtaining access to certain third-party business records constitutes a search within the meaning of the Fourth Amendment, the Eleventh Circuit has applied *Katz*'s reasonable-expectation-of-privacy test. *United States v. Davis*, 785 F.3d 498, 507 (11th Cir. 2015) (citing *Katz*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576)).

The *Katz* inquiry is two-part: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? *Id.* (citing *California v. Ciraolo*, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811, 90 L. Ed. 2d 210 (1986)). "Second, is society willing to recognize that expectation as reasonable?" *Id.* Thus, "a party alleging an unconstitutional search under the Fourth Amendment must establish both a subjective and an objective expectation of privacy to succeed." *United States v. Robinson*, 62 F.3d 1325, 1328 (11th Cir. 1995).

In subsequently applying *Katz*'s test, the Supreme Court held, in *United States v. Miller* and *Smith v. Maryland*, that individuals have no reasonable expectation of privacy in certain business records owned and maintained by a third-party business. *Miller*, 425 U.S. 435, 437-38, 96 S. Ct. 1619, 1621, 48 L. Ed. 2d 71 (1976); *Smith*, 442 U.S. at 739-40, 99 S. Ct. at 2579-80.

**A. Defendant Bennett has no reasonable expectation of privacy in bank records owned and maintained by JP Morgan Chase, Wells Fargo, and Bank of America.**

The Supreme Court in *Miller* held that an individual had no protectable Fourth Amendment interest in his bank account records because the documents were: (1) business records of transactions to which the banks were parties and (2) Miller voluntarily conveyed the information to the banks. 425 U.S. at 440-43, 96 S. Ct. at 1622-24. Miller had "neither ownership nor possession" over the papers and the records. *Id.* at 437, 440, 96 S. Ct. at 1621, 1623. Rather, the papers were "the business records of the banks." *Id.* at 440-41, 96 S. Ct. at 1623. All of the bank records contained information "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id.* at 442, 96 S. Ct. at 1624. The Supreme Court noted "that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* at 443, 96 S. Ct. at 1624; *see also In re Grand Jury Proceeding*, 842 F.2d 1229, 1234 (11th Cir. 1988) ("[A]n individual has no claim under the fourth amendment to resist the production of business records held by a third party.").

Even considering the significant advances in computer technology, automated banking, and the evolution of online purchasing platforms since the Supreme Court decided *Miller*, the premise upon which the opinion is based remains true; *i.e.*, bank records contain information that is *voluntarily* conveyed by the account-holder to the banks and exposed to their employees in the ordinary course of business. The ability to conduct bank transactions remotely, without interaction

5

with an employee in person, does nothing to negate the voluntary nature of the account holder's exchange of information with a third-party financial institution. Nor does the prevalence of online banking change the nature of the information that is a considered a business record held by a third-party.

Consistent with this reasoning, the Supreme Court more recently has affirmed the vitality of its holding, explicitly declining to overrule *Miller,* even while recognizing the emergence of individual privacy interests in other narrow categories of third-party business records. *See Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) ("Our decision today is a narrow one. . . We do not disturb the application of *Smith* and *Miller*."). And the Eleventh Circuit consistently has followed *Miller*, opining that the third-party doctrine still precludes the conclusion, similarly pressed here by Defendant Bennett, that the government must show probable cause to enforce a summons or subpoena issued to financial institution for financial records. *See Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018) (upholding the denial of account holders' motions to quash administrative summonses issued to Bank of America by the Internal Revenue Service because they lacked a reasonable expectation of privacy under the Fourth Amendment in information revealed to a third party and conveyed by that third party to Government authorities).

Defendant Bennett urges the Court to reconsider what the United States Supreme Court and the Eleventh Circuit already have explicitly declined to do; that is, to overrule the decision in *Miller* and extend the narrow holding of *Carpenter* to find that Bennett has a reasonable expectation of privacy in the

business records of JPMorgan Chase, Wells Fargo, and Bank of America. (See Doc. 117, at p. 6). But there exists no legal or equitable justification for doing so.³ Defendant Bennett voluntarily shared information with the banks, knowing that those third parties would keep records⁴ related to her banking transactions in the ordinary course of business. Consequently, Defendant Bennett cannot show that she has a protectible Fourth Amendment interest in the evidence that she seeks to suppress, and the Court should deny the motion on that basis.

---

³ Defendant also cites the California Consumer Privacy Act of 2018 for the proposition that some states have set notice requirements for businesses that collect personal data and which allows citizens autonomy to opt out of having their information shared by businesses to other parties. (Doc. 117, at p. 5). This state civil statute, even if it was applicable to the Defendant, does not establish a Fourth Amendment expectation of privacy in a bank's business records, nor does it require a showing of probable cause prior to the government seizing said information.

⁴ Defendant's motion alternatively advocates for the abandonment of the third-party doctrine in favor of an approach, contemplated by Justice Gorsuch in his dissenting opinion in *Carpenter*, in which an account holder's sharing of financial information with a bank is considered a "bailment" and the bank is considered a "bailee" who "owes a legal duty to keep the items safe, according to the terms of the parties' contract if they have one." (Doc. 117, at 6-7) (citing *Carpenter*, 138 S.Ct. at 2261-2262 (Gorsuch, J. dissenting)). But the majority opinion in *Carpenter* explicitly declined to adopt the analysis urged by Defendant; nor has the Eleventh Circuit recognized such an approach. Consequently, the bailment theory is not the controlling law upon which this Court should decide the Defendant's motion.

**B. Defendant has no reasonable expectation of privacy in toll records, subscriber detail, or account-related business records owned and maintained by AT&T.**

The Supreme Court in *Smith v. Maryland* held that telephone users have no reasonable expectations of privacy in dialed telephone numbers recorded through pen registers and contained in the third-party telephone company's records. 442 U.S. at 742-46, 99 S. Ct. at 2581-83. The Supreme Court determined that Smith had no subjective or objective expectation of privacy in the numbers he dialed on the telephone and thus the installation of the pen register, by the telephone company at the government's request, did not constitute a search under the Fourth Amendment. *Id.*

As to the subjective expectation of privacy, the Supreme Court in *Smith* doubted that "people in general entertain any actual expectation of privacy in the numbers they dial" because "[a]ll telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed." *Id.* at 742, 99 S. Ct. at 2581. The Supreme Court stated that "[t]elephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes." *Id.* at 743, 99 S. Ct. at 2581. "Although subjective expectations cannot be scientifically gauged, it is too much to believe that telephone subscribers, under

8

these circumstances, harbor any general expectation that the numbers they dial will remain secret." *Id.*

As to the objective expectation of privacy, the Supreme Court determined that, "even if [Smith] did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not 'one that society is prepared to recognize as reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361, 88 S. Ct. at 516) (internal quotation marks omitted). The Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 743-44, 99 S. Ct. at 2582.

The Supreme Court in *United States v. Carpenter* declined to extend the third-party doctrine to cell-site location information, holding that "a warrant is required in the rare case where the suspect has a legitimate privacy interest in records held by a third party." 138 S. Ct. 2206, 2222 (2018). But the Court stressed that its holding "is a narrow one," with specific consideration given to "the unique nature of cell phone location information," *id.* at 2220, which "provides an intimate window into a person's life," *id.* at 2217. *Carpenter* reiterated that two primary rationales underlie the third-party doctrine: the nature of the information sought and the voluntariness of the exposure to third parties. Importantly, the *Carpenter* Court explicitly declined to overrule *Smith*. *Id.* at 2220. And despite significant advances in cell phone technology, the Eleventh Circuit continues to follow *Smith*. *See, e.g. United States v. Gayden*, 977 F.3d 1146, 1151 (11th Cir. 2020) (based on binding precedent in *Smith*, affirming the denial of a motion to suppress records obtained

by the government from the Florida Prescription Drug Monitoring Program system without a warrant).

In the instant case, the government obtained no more extensive or intrusive information than the records that were at issue in *Smith*. Specifically, the government obtained through subpoena only non-content evidence: toll records and subscriber information. Neither her toll records nor her subscriber information contained private communications of the subscriber or data concerning her location. This type of non-content evidence, lawfully created by a third-party telephone company for legitimate business purposes, does not belong to Bennett. She can assert neither ownership nor possession of the third-party's business records; those records were created by AT&T, stored on its own premises, and subject to its control. Therefore, neither one day nor several months of such records, produced by subpoena, violates the Fourth Amendment. Accordingly, binding precedent compels the conclusion that Bennett had no reasonable expectation of privacy in the records and consequently, the Court also should deny her motion to suppress evidence obtained pursuant to the Grand Jury subpoenas.

### III.  Conclusion

This Court is bound by the decisions in both *Miller* and *Smith*, which dictate that a warrant is not required for the government to obtain bank records and cell phone information that Defendant voluntarily provided to the third-party companies.

Accordingly, the government requests the Court deny Defendant Bennett's Motion to Suppress Grand Jury Subpoenas.

Respectfully submitted, this 1st day of JULY 2022.

>Ryan K. Buchanan
>    United States Attorney
>Northern District of Georgia
>
>s/ *Irina K. Dutcher*
>IRINA K. DUTCHER
>    Assistant United States Attorney
>Georgia Bar No. 583088
>600 Richard B. Russell Building
>75 Ted Turner Drive SW
>Atlanta, Georgia 30303
>(404) 581-6000
>(404) 581-6181 FAX

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing Response in Opposition to Defendant's First Motion to Suppress Grand Jury Subpoenas today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

>Bruce Harvey
>Law Offices of Bruce S. Harvey
>146 Nassau St. NW
>Atlanta, GA 30303
>(404)659-4628
>bruce@bharveylawfirm.com

July 1, 2022

>/s/ *IRINA K. DUTCHER*
>
>Irina K. Dutcher
>
>*Assistant United States Attorney*