IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ELIAYAH BENNETT, A/K/A Indiana,<br><br>    Defendant. | CRIMINAL ACTION NO. 1:20-cr-00481-SCJ-RDC-3 |

# REPORT AND RECOMMENDATION

This criminal case is before the Court on Defendant Eliayah Bennett's Motion to Suppress Search Warrant and Other Evidence (Doc. 114) and Motion to Suppress Grand Jury Subpoenas. (Doc. 117). The Government filed its responses on July 1, 2022. (Docs. 123, 124). The time for filing a reply brief has passed, and these matters are now ready for disposition. After careful review of the Defendant's pleadings, the Government's responses, and the applicable law, Ms. Bennett's motions are due to be **DENIED**.

## **Factual and procedural background**

On December 8, 2020, Ms. Bennett, along with co-conspirators Arthur Lee Cofield and Eldridge Maurice Bennett, was named in a seven-count Indictment charging her with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Six) and money laundering in violation of 18 U.S.C. §§ 1957 and 2. (Count Seven). (Doc. 1). Mr. Cofield is charged in Count One with conspiracy to commit bank fraud in violation of 18 U.S.C. §1349 and in Count Two with aggravated identity theft in violation 18 U.S.C. §§1028A(a)(1) and 2. Mr. Cofield and Mr. Bennett are charged in Count Three with conspiracy to commit money laundering in violation of 18 U.S.C. § 956(h), money laundering in violation of 18 U.S.C. §§ 1956(a)(l)(B)(i) and 2 (Count Four) and money laundering in violation of 18 U.S.C. §§ 1956(h) and 2 (Count Five). (*Id.*). The charges against Ms. Bennett stem from the fraudulent transfer of millions of dollars from a Charles Schwab bank account that were eventually used to purchase a residence located at 4099 Randall Mill Road N.W. in Atlanta. (Doc. 123 at 4-6). The Government alleges that she knew the financial transaction involved property valued at greater than $10,000 and that the funds were criminally derived as the result of bank fraud. (*Id*. at 12-13).

Four days before the Indictment was returned, Chief United States Magistrate Judge Russell G. Vineyard issued a search warrant authorizing the search of a

residence located at 4420 Northside Chase N.W. in Atlanta, which was associated with Ms. Bennett. (Exhibit A, Search Warrant, hereinafter "Ex. A").[1] The warrant authorized law enforcement officers to search for evidence related to the alleged conspiracy to commit bank fraud and money laundering. (*Id.*). During the execution of the warrant, officers seized (among other items) a Land Rover SUV, a firearm, laptops, a cell phone, and United States currency. The Randall Mill Road property and the proceeds unlawfully obtained during commission of the conspiracy are subject to forfeiture. (Doc. 1 at 10-11).

Four subpoenas were also procured in connection with the Government's investigation of this matter. Three of those subpoenas, issued on November 3, 5 and 18, 2020, directed officials with JP Morgan Chase, Wells Fargo and Bank of America to surrender financial records for accounts pertaining to Ms. Bennett and her business – 4XElevenLLC. (Doc. 124 at 2-3). The fourth subpoena directed AT&T to provide toll records, subscriber information, and account-related information for a phone associated with Ms. Bennett. (*Id.* at 3). Ms. Bennett challenges the legality of the issuance of the subpoenas and the validity of the search warrant.[2]

---

[1]  Exhibits A and B will be filed under seal by the Government.

[2]  Ms. Bennett has requested that this Court conduct evidentiary hearings to address these claims. Because the alleged errors do not require additional factual findings and can be adjudicated on the pleadings, this request is denied. See, *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)(explaining that where defendant in her motion to

3

## **The parties' contentions**

Ms. Bennett's motions seek to suppress evidence seized from her residence and records provided to the Government by third parties in compliance with grand jury subpoenas. She submits that the seizure of evidence from her home was illegal because the "warrants [sic] were not supported by probable cause, failed to describe with particularity the items to be seized, and provided no nexus of illegal activity, the warrant was defective." (Doc. 114 at 3). Specifically, she asserts that the warrant was defective because it was overbroad, "failed to describe with particularity" the items the officers intended to seize and failed to establish a nexus between the compromised Charles Schwab account and her residence. (*Id.* at 2-3).

Ms. Bennett also claims that the seizure of her financial documents and phone records was unconstitutional because the subpoenas were issued without probable cause or her consent. (Doc. 117 at 4-9). In reliance on Supreme Court precedent – *Riley v. California*, 573 U.S. 373 (2014) and *Carpenter v. United States,* 138 S.Ct. 206 (2018) - she insists that "the Government should get a warrant supported by

---

suppress "fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion."). See also, *United States v. Nunez*, 1 F.4th 976, 988 (11th Cir. 2021) (holding that the district court did not abuse its discretion "when it declined to hold an evidentiary hearing in the absence of a factual dispute or proffer of evidence to be presented by the requester of the hearing.").

probable cause for cell phone subscriber records and pen registers as well as for bank records" in compliance with the Fourth and Fifth Amendments. (Doc. 117 at 6).

The Government urges this Court to reject these claims, arguing that the search of Ms. Bennett's home will survive this constitutional challenge because the Affidavit was supported by probable cause, limited the scope of the search to information that related to the investigation of the alleged scheme, established a nexus between the targeted bank account and Ms. Bennett's home and was "specific in its description of the items to be searched for and seized and was reasonable under the circumstances at the time the warrant was issued."(Doc. 123 at 14). It also submits that even if this Court finds that the search warrant was insufficient, the seized evidence would not be subject to suppression based on the good-faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 922 (1984). *(Id.* at 15). As for her challenge to the production of evidence in compliance with the subpoenas, the Government claims that Ms. Bennett lacks standing to contest this production. Because the Supreme Court held in *United States v. Miller,* 425 U.S. 435 (1976) and *Smith v. Maryland,* 422 U.S. 735 (1979) that telephone users have no reasonable expectation of privacy in records maintained by telecommunication companies, it argues, Ms. Bennett has no legitimate expectation of privacy in the information controlled by AT&T. (Doc. 124 at 8-9). The same holds true for her bank records, the Government submits;

asserting that the third party doctrine precludes her argument that it must establish probable cause to enforce a subpoena issued to a financial institution for its records. (Doc. 124 at 6-7). Moreover, because there "exists no legal or equitable justification" for recognizing a reasonable expectation of privacy in the banks' business records, the Government avers, Ms. Bennett cannot prove that she has "a protectible Fourth Amendment interest in the evidence that she seeks to suppress." (*Id*. at 7).

## DISCUSSION

### The search warrant affidavit was supported by probable cause

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750 (11th Cir. 1984). Search warrants are presumed to be validly issued. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The defendant bears the burden of establishing that a warrant was defective or executed improperly. *Id.*; *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986); *United States v.*

*Osborne*, 630 F.2d 374, 377 (5th Cir. 1980). [3] Whether a search warrant affidavit establishes probable cause is a question of law. *United States v. Miller*, 24 F.3d 1357, 1360 (11th Cir. 1994). Probable cause to support the issuance of a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. See, *United States v. Noriega*, 676 F.3d 1252, 1261 (11th Cir. 2012); *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009); *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991). Further, "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999); it "deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Gates*, 462 U.S. at 241 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Moreover, "[p]robable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *United States v. Angulo-Hurtado*, 165 F. Supp. 2d 1363, 1376 (N.D. Ga. 2001) (quoting *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996)). Yet, an

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions rendered by the Fifth Circuit before October 1, 1981.

affidavit will be found deficient if it contains merely conclusory allegations and fails to provide sufficient information in order for the judge to conclude "that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (internal quotation marks omitted); *Gates*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.").

In deciding whether to issue a search warrant, the issuing judge may rely upon the opinions and conclusions of an experienced law enforcement agent-affiant, *United States v. Robinson*, 62 F.3d 1325, 1331 n. 9 (11th Cir. 1995), since "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Gonzalez*, 969 F.2d 999, 1004 (11th Cir. 1992) (quoting *United States v. Fouche*, 776 F.2d 1398, 1403-04 (9th Cir. 1985)); See also, *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.") (citations omitted). To justify a search, the circumstances must indicate why evidence of the alleged illegal activity

will likely be found in a particular place. *Gates*, 462 U.S. at 238; *Warden v. Hayden*, 387 U.S. 294, 307(1967); *United States v. Griffin*, 555 F.2d 1323, 1325 (5th Cir. 1977). Therefore, an affidavit "must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010). "[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982). Lastly, "probable cause must exist when the magistrate judge issues the search warrant," *United States v. Santa*, 236 F.3d 662, 672 (11th Cir. 2000) (quoting *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994)), because a search is not to be made legal by the evidence that is discovered. *United States v. Di Re*, 332 U.S. 581, 595 (1948). With these principles in mind, the undersigned turns to Ms. Bennett's claimed errors.

In the case at bar, Ms. Bennett submits that the Affidavit was insufficient for the following reasons: (1) it failed to particularly describe what evidence the officers would seize from the residence, (2) it did not establish a nexus between Ms. Bennett's alleged conduct and her residence, (3) it "contained no information showing [she was] involved in any criminal activity" and (4) it was "overly-broad and non-

9

particularized." (Doc. 114 at 2-3). The Government argues that these claims are meritless, contending that the Affidavit established Ms. Bennett was actively involved in the fraudulent scheme with her co-conspirators and that a "connection between the defendants' money laundering activity and the Residence to be search[ed]" was clearly articulated by Postal Inspector Christopher Zito. (Doc. 123 at 3). It also asserts that the warrant delineated nine specific categories of evidence related to the bank fraud and money laundering crimes that law enforcement officers intended to seize. (*Id.* at 14). This specificity, the Government argues, undermines Ms. Bennett's claim that the law enforcement officers "conducted a general exploratory rummage" through her home. (*Id.* at 12-13).

     Ms. Bennett's assertion that the Affidavit does not offer any evidence of her involvement in the alleged offenses is factually inaccurate. To begin, the Affiant described his experience in conducting an array of criminal investigations as an Air Marshal with the United States Air Marshal Service and as a United States Postal Inspector, explaining that his experience has provided insight into suspects' use of "various electronic devices (e.g., cellular telephones, iPads, laptops, etc.) to commit and further certain crimes." (Ex. B at 2). Inspector Zito also stated that his investigative experience involved "reviewing telephone call detail records, including records related to Global Position System (GPS), Enhanced 911, specific latitude and

longitude, and other precise location information for subject telephones"; tools he utilized in the instant case. (Ex. B at 2-3).

Next, he explained that his investigation revealed Mr. Cofield (while incarcerated in a state prison facility) utilized a cell phone to illegally access an account maintained by the Charles Schwab Corporation. According to Inspector Zito, Mr. Cofield commandeered the bank account by assuming the identity of the rightful owner of the account and electronically transferring $11,000,000 from the account to a third party. (*Id.* at 4-6). These stolen funds were eventually used to facilitate the purchase of the Randall Hall Road property. Inspector Zito stated that Ms. Bennett was in contact with Mr. Cofield during the illegal transfer of the funds and the subsequent real estate transaction. He also learned that she disguised her identity by adopting a fictious persona when she transported Mr. Bennett to various locations as he met with victims in order to consummate the illegal transactions. (*Id.* at 11-12).

As the Government emphasized, Inspector Zito presented a meticulous summary of the acts committed by the co-conspirators preceding the search of Ms. Bennett's home:

> 4420 Northside Chase (**Target Location #1**) appears to be the current residence of BENNETT and ELIAYAH. Both BENNETT and ELIAYAH used this location to convey several hundred thousand dollars in cash to Zembillas to purchase 4099 Randall Mill Road (**Target Location #2**). While 4099 Randall Mill Road (**Target Location #2**) is in the process of renovation/construction, BENNETT and ELIAYAH have access to the property and the large safe

11

> attached to the master bedroom, and appear likely to relocate to this residence upon completion of the construction. Because COFIELD is incarcerated, and based on the investigation so far, I believe COFIELD conducts his fraudulent activities exclusively through the use of his contraband cellphone. This activity includes frequent contact with various conspirators located outside of prison. Based on this information, I believe that presently at the Target Locations there is evidence of the fraudulent conspiracy as outlined in Attachment B, which would include gold coins last known to be in the possession of BENNETT, cash proceeds derived from the fraudulent conspiracy, and various electronic devices used to communicate with COFIELD and other conspirators.

(Ex. B at 17; Doc. 123 at 8-9).

Ms. Bennett's presence during these transactions, her continual communication with Mr. Cofield as evidenced by the telephonic data obtained by the officers, and the deliberate concealment of her true identity, undermine her assertion that the Affidavit is devoid of evidence showing that she was a knowing participant in the conspiracy. Indeed, the Government need only establish that the Affidavit establishes that she *probably* engaged in the suspected criminal activity. See, *United States v. Hodges*, 705 F.2d 106, 108 (11th Cir. 1983), quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969). ("Probable cause simply means that a 'probability, and not a prima facie showing, of criminal activity' be established."). Furthermore, this evidence also establishes a nexus between Ms. Bennett's illegal conduct and her residence. "[E]vidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977), citing *United States v. Lucarz,* 430

F.2d 1051 (9th Cir.1970); See also, *United States v. Jenkins*, 901 F.2d 1075 (11th Cir. 1990)(where court found that affidavit clearly established probable cause that contraband would be found at defendant's home because he was the only employee in the bank at the time of the theft and possessed keys to the bank) and *United States v. Bradley*, 644 F.3d 1213, 1263-64 (11th Cir.2011)("[A] police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause.").

This Court also concludes that the scope of the warrant was not unconstitutionally broad. Exhibit A provides concise descriptions of the evidence the Affiant sought related to the bank fraud and money laundering offenses: books or records related to the financial transactions, bank records, credit card bills and account information associated with fraudulent activity, occupancy information related to the target locations, stored communications including voice calls, text messages and emails and safes or hidden compartments where documents or currency could be concealed. (Ex. A, Attachment B at 1-2). See, *United States v. Sawyer*, 799 F.2d 1494, 1509 (11th Cir. 1986) (explaining that a search "may be as extensive as reasonably required to locate and seize items described in the warrant," and that the reasonableness of a particular search depends upon the complexity of the crimes being investigated "and the difficulty involved in determining whether certain documents

13

evidence fraud."). See also, *Riley v. California*, 573 U.S. at 373, 401 (2014) (recognizing that "[c]ell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and provide valuable incriminating information about dangerous criminals."). Notably, the warrant limited the scope of the search of all electronic devices to a defined period of time from June 1, 2020, through the date of the application for the warrant. (Ex. A, Attachment B at 1).

Thus, this Court finds that the Affidavit provided extensive details summarizing the nature of the conspiracy and the types of contraband the law enforcement officers intended to seize. Accordingly, the undersigned finds that probable cause supported the issuance of the search warrant. Furthermore, the Affidavit clearly established a nexus between the alleged criminal activity and Ms. Bennett's residence. Based on these findings, an analysis of the applicability of the *Leon* good-faith exception is unwarranted. Thus, Ms. Bennett's Motion to Suppress Search Warrant and Other Evidence (Doc. 114) should be **DENIED.**

### Ms. Bennett lacks standing to contest the issuance of the subpoenas

Ms. Bennett moves to suppress the evidence produced by third parties in compliance with grand jury subpoenas. She submits that she maintains a privacy interest in the records provided by JP Morgan Chase, Wells Fargo, Bank of America

and AT&T, and that these records are her "property and effects in bailment…and are protected by the Fourth Amendment." (Doc. 117 at 3). [4] She also argues that recent Supreme Court precedent, ((*Riley v. California*, 573 U.S. 373 (2014) and *Carpenter v. United States,* 138 S.Ct. 206 (2018)), signifies an erosion of the third party doctrine [5] ; supporting her contention that Fourth Amendment protections are applicable in light of the significant technological advancements currently employed by companies to gather and store customers' personal information. (*Id.* at 4-5). Therefore, she submits, the analysis undergirding those decisions support her claim that she has standing to suppress the contested evidence. (*Id.* at 4-7).

The Government disagrees, asking this Court to reject Ms. Bennett's invitation to recognize an expectation of privacy in records the companies created, stored and

---

[4]  Ms. Bennett also moves to quash the subpoenas, asserting the same constitutional violations. (Doc. 117 at 1,8). The Government argues*, inter alia*, that her motion to quash is untimely because the responsive records have already been produced. This Court agrees. (Doc. 124 at 1). Because the third parties have already produced the records in compliance with the subpoenas, the motion should be denied as moot. *Cf, In re Grand Jury Proceedings,* 142 F.3d 1416 (11th Cir. 1998) (holding that because a witness had already testified before the grand jury, there was no effective relief to provide to the appellants. Because there was no remedy the appellant court could grant, the appeal was dismissed as moot.).

[5]  Pursuant to the third-party doctrine, "a party lacks a reasonable expectation of privacy under the Fourth Amendment in information 'revealed to a third party and conveyed by [that third party] to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Presley v. United States*, 895 F.3d 1284 (11th Cir. 2018), quoting *United States v. Miller,* 425 U.S. 435, 443 (1976).

15

produced. In reliance on *Presley v. United States*, 895 F.3d 1284 (11th Cir. 2018), the Government avers that Ms. Bennett does not have standing to challenge the production of these records because "she cannot demonstrate a reasonable expectation of privacy in records held by the banks and cell phone service providers." (Doc. 124 at 1). It submits that because she voluntarily shared information with the banks knowing that they would keep those records in the ordinary course of their business, she lacks standing to object to their compliance with the subpoenas. (*Id.* at 7). As for the toll records and subscriber information provided by AT&T, the Government also argues that Ms. Bennett cannot show that she had ownership or possession of records AT&T created, "stored on its own premises and [were] subject to its control." (*Id.* at 10). It asserts that these records constitute evidence "lawfully created by a third-party telephone company for legitimate business purposes, [and] does not belong to Bennett." (*Id.*). Thus, the Government continues, her motion should be denied.

The Government's arguments are persuasive. Neither Supreme Court nor Eleventh Circuit precedent recognizes an individual's expectation of privacy in the records produced by the third parties in this context. *United States v. Miller,* 425 U.S. 435, 443 (1976)("the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities."), *Smith v. Maryland,* 442 U.S. 735 (1979)(finding that the use of pen

registers that monitor phone numbers dialed by users is not private information that requires the Government to obtain a search warrant) and *Presley*, 895 F.3d at 1290-91("settled precedent requires us to conclude that Plaintiffs' clients lack a reasonable expectation of privacy in financial records held by the Bank, so the Fourth Amendment does not require a showing of probable cause"). As the *Miller* Court explained, "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443.

Likewise, the *Smith* Court provides no support for Ms. Bennett's Fourth Amendment claim regarding AT&T's records, explaining that "even if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not 'one that society is prepared to recognize as 'reasonable.' This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith*, 442 U.S. at 735, 743-44, quoting *Katz v. United States*, 389 U.S. 347 at 361 (1967). Accordingly, Ms. Bennett has not proven that she has a personal right or privilege in the documents, and therefore does not have standing to challenge the subpoenas.

Finally, this Court also rejects Ms. Bennett's claim that the Government was required to establish probable cause to enforce the issuance of the subpoenas. Because the undersigned has already determined that she does not have standing to contest the third parties' production of the seized documents, her lack of standing (and the ruling issued in *Presley*) dooms this claimed error as well.

## CONCLUSION

For the reasons stated above, this Court **RECOMMENDS** that Ms. Bennett's Motion to Suppress Search Warrant and other Evidence (Doc. 114) and Motion to Suppress Grand Jury Subpoenas be **DENIED**. (Doc. 117). Having now addressed all referred pretrial matters relating to Ms. Bennett and having not been advised of any impediments to the scheduling of a trial as to her, this case is **CERTIFIED READY FOR TRIAL.**

**IT IS SO RECOMMENDED** this 10th day of August, 2022.

*/s/ R. Cannon*
REGINA D. CANNON
United States Magistrate Judge