# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **CASE NO. 1:20-CR-481-SCJ-RDC-3** |
| | ) | |
| **ELIAYAH BENNETT, et. al.** | ) | |
| Defendant. | ) | |

## DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION

COMES NOW Eliayah Bennett (hereafter "Bennett") though undersigned counsel, and pursuant to 28 U.S.C. §636(b)(1), and Fed. R. Crim. P. 59(a) respectfully makes the following objections to the Report and Recommendation (R&R) entered in this matter on August 10, 2022 (*See* Doc. 131). For the reasons stated below, the R&R should not be followed, and the seizure of items from Bennett's residence an bank accounts should be suppressed.

    Government agents unlawfully seized Bennett's cell phone subscriber information and toll records on or about November 3, 2020; bank records from Wells Fargo on or about November 5, 2020, Bank of America, and JPMorgan Chase on or about December 1, 2020; and personal property at her residence at 4420 Northside Chase NW, Atlanta on or about December 4, 2020 on the speculative theory that she was involved in theft of funds from Charles Schwab. The R&R recommended that Ms. Bennett's motions to suppress be denied, reasoning that (1) the search warrant affidavit for Bennett's residence was

1

supported by probable cause, and (2) that Bennett lacks standing to contest the issuance of the subpoenas. (Doc. 131 at 14, 17).

This Court should decline to follow the R&R. First, the R&R errs when it concludes the affidavit of Postal Inspector Zito put forth enough details to support probable cause to search her residence. (Doc. 131 at 14). The R&R erred when it found that totality of the circumstances presented in the Affidavit allowed for a fair probability that evidence for the misappropriation of funds from Charles Schwab would be found in her residence. (Doc. 131 at 12). The R&R also erred when it found that Inspector Zito's affidavit established a nexus between the Bennett's residence and the items to be seized. (*Id.* at 12). The R&R erred when it concluded that the scope of the warrant was not unconstitutionally broad. (*Id.* at 13). Finally, the R&R erred when it concluded that Bennett didn't have a privacy interest in her bank and cell phone subscriber records enough to support a claim for protection under the Fourth Amendment. (*Id.* at 17).

## LEGAL STANDARD

"A ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). This Court's review is de novo. See 28 U.S.C. §636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## OBJECTIONS

I. **THE TOTALITY OF THE CIRCUMSTANCES DON'T SUPPORT PROBABLE CAUSE FOR THE SEARCH WARRANT.**

    a. **The Affidavit For The Warrant Shows No Criminal Activity of Bennett's.**

The R&R states that Bennett's assertion in her motion that the Affidavit doesn't show any criminal activity on her part is inaccurate. (Doc. 131 at 10). It proposed that Ms. Bennett's alleged presence during "these transactions," her phone contact with Mr. Cofield, and her alleged "adopting a fictious persona" counteracted her claim that the affidavit lacks evidence of her participation in a conspiracy regarding the funds lost by Charles Schwab. (*Id.* at 11-12). The R&R takes it as a given that these circumstances are enough to show that she "*probably* engaged in the suspected criminal activity*" for the purpose of probable cause. (*Id.* at 12). However, nothing about these circumstances are inherently criminal. Bennett objects to that conclusion and offers that her assertion that the affidavit fails to show criminal activity on her part is accurate for several reasons.

    Inspector Zito in the affidavit avers that 'Indiana' is a known alias for Bennett without elaboration and speaks about Bennett's marriage to Cofield as a mere claim and not factual without alleging any evidence to support either premise

(Ex. B at 10). The R&R considered this evidence that "she disguised her identity by adopting a fictious persona when she transported Mr. Bennett" without any basis in the affidavit or in fact. (Doc. 131 at 11). Inspector Zito also stated in support of his affidavit that Bennett was listed with the Georgia Department of Corrections as an emergency contact for Mr. Cofield, that she was approved to handle his finances while he remained incarcerated, and that she remained in contact with Mr. Cofield throughout the period that the incidents alleged in the indictment occurred. (Ex. B at 10).

There's nothing inherently suspicious about Bennett being in contact with her husband at any time. The first part of an analysis of probable cause relies on a determination of the historical facts. *Ornelas v. United States,* 517 U.S. 690, 696 (1996). The determination of probable cause also relies on law enforcement having reasonable, trustworthy information. *Beck v. Ohio,* 379 U.S. 89, 91 (1964), *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984). The assertions made by Inv. Zito in this regard amount to bare conclusions not based on historical facts that

4

are reasonably trustworthy. They should be disregarded in the Court's analysis of the affidavit and warrant.

### b. There's No Nexus Between Bennett's Residence and the Alleged Crimes.

The R&R cites Bennett's "illegal conduct" as part of its justification for finding a nexus between her residence and the crimes she's alleged to have committed. (Doc. 131 at 12). However, there is no evidence presented by Inv. Zito in his affidavit that Ms. Bennett was in possession of stolen material or otherwise engaging in illegal activity at her residence at 4420 Northside Chase NW. The only information cited in the R&R that pertains to this address at all is that it was Bennett's residence around the time of the purchase of 4099 Randall Mill Road described in the affidavit and that the owner of said property, Zembillas, met her there to collect part of the down payment for the property. (*Id* at 11-12).

At the time of the affidavit and execution of the warrant, Inv. Zito had no specific information that any gold coins were on the premises of at 4420 Northside Chase NW or any cash proceeds. Nor did he articulate how any cell phones or other electronic devices used to communicate with co-defendant Cofield were being used to further any criminal enterprise. Again, Bennett and Cofield were known to be very close and in frequent communication but there was no information that any of these communications with Bennett were furthering any

criminal enterprise. "The connection between the residence and the evidence of criminal activity must be specific and concrete" and not vague or generalized. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). Inv. Zito may have had a vague hunch that the cash given to the seller Zembillas was connected to the theft of funds from Charles Schwab and its conversion to gold. However, such a hunch completely disregarded the more likely possibility that the money was earned by Bennett through her employment, which is never discussed by Zito in the warrant or affidavit. The R&R erroneously concluded it was likely that evidence of stolen material was possessed by Bennett at her residence.

### c. The Scope Of The Search Warrant Was Unconstitutionally Broad

The R&R concluded that the scope of the warrant wasn't unconstitutionally broad. The Fourth Amendment's requirement that search warrants particularly describe the places to be searched and the things to be seized protects individuals from oppressive general warrants. *United States v. Travers*, 233 F.3d 1327 (2000) (warrant executed in case involving mail fraud and money laundering permitting officers to search for "all documents involving real estate, litigation, property, mailings, photographs and any other material reflecting identity, and anything reflecting potential fraud" found to be overly broad). While the 'good faith' exception to the exclusionary rule may be applied to a search done pursuant to an

overbroad warrant, it is not available where "the warrant is so overly broad on its face that the executing officers could not reasonably have presumed it to be valid. *United States v. Travers*, 233 F.3d at 1329-1330, citing *United States v. Accardo*, 749 F.2d 1477 (11th Cir. 1985).

The list of items to be seized attached to the search warrant for Bennett's residence at 4420 Northside Chase NW included "Books, records, receipts, notes, correspondence, ledgers, and other documents and/or papers relating to financial transactions;" "Evidence related to any bank records, checks, credit card bills, account information, and other financial records, which may be associated with the proceeds of fraudulent activity;" "Financial statements/records, loan records, payment journals, signature cards, keys and/or other items/records identifying assets or evidencing legitimate income (or the lack thereof); general living expenses; the obtaining, secreting, transferring, and/or concealing of assets; and the obtaining secreting, transferring, concealing and/or spending of money;" as well as defining "the terms records, documents, programs, applications, or materials includes records, documents, programs, applications, or materials created, modified, or stored in any form, including data stored on laptop, desktop, and tablet computers, cellular phones, and electronic storage devices such as hard drives and thumb drives." (Ex. A, Attachment B at 1-2) The listed items "cut a wide swath through [Bennett's] papers and documents" like the one determined to

7

be overly broad in *Travers*. *United States v Travers,* 233 F.3d at 1330. They're especially ironic considering that law enforcement had already subpoenaed all of her known bank records in the month preceding the issuance of this warrant, and in the case of her Wells Fargo and JPMorgan Chase records, for several preceding years. (Doc 117 at 2). The R&R's conclusion that "the scope of the warrant wasn't unconstitutionally broad" (Doc. 131 at 13) must be rejected.

## II. MS. BENNETT HAD A PRIVACY INTEREST IN HER BANK AND CELL PHONE SUBSCRIBER RECORDS AND THE GOVERNMENT WAS REQUIRED TO GET A WARRANT TO SEARCH THEM.

### a. Ms. Bennett Had Standing To Contest The Issuance Of The Subpoenas.

The R&R erred when it concluded that Bennett lacked standing to challenge the subpoenas for her bank records and her cell phone subscriber records. (Doc. 131 at 17). Recent decisions by the U.S. Supreme Court such as *United States v. Jones*, 565 U.S. 400 (2012) (Sotomayor, concurring. Installation of a GPS tracking device on a vehicle without a warrant and without the owner's consent invaded his privacy interest in his vehicle, implicating Fourth Amendment Protections.), *Riley v. California*, 573 U.S. 373, (2014) (Police may not search digital information contained in the cell phone of an arrested person without a warrant.) and

8

*Carpernter v. United States*, 138 S. Ct. 2206 (2018) (An individual has an expectation of privacy in Cell Site Location Information obtained from third-party cellular data providers and acquisition of such records is a search under the Fourth Amendment) have expanded the areas that individuals enjoy a reasonable expectation of privacy. Though the Court in *Carpenter* declined to specifically overrule their previous decisions in *United States v. Miller*, 425 U.S. 435 (1976) (No legitimate expectation of privacy in a person's financial records held by a bank) and *Smith v. Maryland*, 442 U.S. 735 (1979) (A person has no legitimate expectation of privacy in the phone numbers they dial that are recorded by a pen register held by the telephone carrier), it cannot be denied that advancing technological developments since the holding in *Smith* are causing the Court to reconsider how it applies the third party doctrine. *Carpenter v. U.S.*, 138 S.Ct. at 2217.

Acknowledging this reality, Justice Gorsuch in his separate dissent in *Carpenter* suggested a new paradigm in Fourth Amendment jurisprudence that returns consideration of an individual's protected interests to one more aligned with an older line of cases that confers Fourth Amendment protection based on and individual's property interests. *Carpenter* at 2268. "Whatever may be left of Smith and Miller, few doubt that e-mail should be treated much like the traditional mail it has largely supplanted – as a bailment in which the owner retains a vital and

9

protected legal interest." *Id*. And like email, the record of financial transactions made electronically held by Bennett's banks, as well as records of phone calls she made held by wireless carriers, should be treated like a bailment where she retains a vital and protected legal interest. "Under this more traditional approach, Fourth Amendment protections for your papers and effects do not automatically disappear just because you share them with third parties." *Id.* The R&R therefor wrongfully denied Bennett's assertion of Fourth Amendment protection for her records and her motion to suppress evidence obtained from JPMorgan Chase, Wells Fargo, Bank of America, and AT&T. (Doc. 131 at 17-18). The R&R, in a footnote, also wrongfully denied her request to conduct an evidentiary hearing to address all her claims. (Doc. 131 at 3, n.2)

## CONCLUSION

For the foregoing reasons, Defendant respectfully objects to the Magistrate Judge's R&R. The Defendant prays that the Court conduct an evidentiary hearing to address these claims and grant her Motions To Suppress.

This 24 day of August 2022.

                            Respectfully submitted,

                            /S/ Bruce Harvey_____
                            LAW OFFICES OF BRUCE S. HARVEY
                            ATTORNEYS FOR DEFENDANT
                            Bruce S. Harvey, #335175
                            bruce@bharveylawfirm.com
                            Jamie Roberts, #608590
                            jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax

## **CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing *Defendant's Objection To Report And Recommendation* on opposing counsel by facsimile transmission, electronic delivery, by hand delivery, or by depositing a copy of the same in the United States Mail with sufficient postage thereon, addressed as follows:

> Irina K. Dutcher, AUSA
> 75 Ted Turner Drive , Suite 600
> Atlanta, Georgia 30303

This 24 day of August 2022.

>
> Respectfully submitted,
>
> /S/ Bruce Harvey_____
> LAW OFFICES OF BRUCE S. HARVEY
> ATTORNEYS FOR DEFENDANT
> Bruce S. Harvey, #335175
> bruce@bharveylawfirm.com
> Jamie Roberts, #608590
> jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax